Eastern District of Kentucky
**FILED**
JAN 1 2 2007
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 05-462-JMH

DENNIS CALDWELL, ET AL., PLAINTIFFS

V.   **MEMORANDUM OPINION AND ORDER**

OLSHAN FOUNDATION REPAIR
CO. OF OKI, L.P., ET AL., DEFENDANTS

\* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

On October 3, 2005, plaintiffs Dennis Caldwell and Cheryl Caldwell, his wife, filed this action in Scott Circuit Court against defendants Olshan Foundation Repair Company of OKI, L.P., d/b/a Olshan Foundation Repair Co. of OKI, Limited; Atlas-Gulf Coast, Inc.; Olshan Foundation Repair Company, L.L.C.; Olshan Foundation Repair Company of Cincinnati, L.P.; and Liberty Mutual Insurance Company (hereafter "Liberty Mutual"), alleging that in September of 2004, they retained defendant Olshan Foundation Repair Company of OKI, L.P. (hereafter "Olshan"), to repair a crack in the basement floor of their residence at 123 Bluebill Court, Georgetown, Kentucky, that Olshan commenced this repair work in October of 2004, and that Olshan negligently performed this repair work, and that in the process of performing this repair work, Olshan caused extensive damages to their residence. Plaintiffs further allege that Olshan subsequently agreed to repair the damages it had caused to their residence and property while performing the original repairs to the crack in the basement floor and that Olshan then negligently repaired the damages it had caused to their residence. Plaintiffs also claim that Olshan damaged their yard, driveway, and a concrete wall with a trailer and generator during the course of Olshan's performance of remedial work to repair the damages, which also resulted in personal injuries to plaintiff Dennis Caldwell.

Plaintiffs assert claims against defendant Olshan for negligence and breach of contract. Plaintiffs claim against defendant Liberty Mutual is for bad faith and for a violation of Kentucky's Unfair Claims Settlement Practices Act, KRS 304.12-230, *et seq.*

Plaintiffs seeks compensatory damages, punitive damages, costs, and attorneys' fees.

On November 1, 2005, the Olshan defendants removed this action from Scott Circuit Court.

This matter is before the court on the Olshan defendants' motion to compel discovery from plaintiffs.[1] This motion has been fully briefed and is ripe for review.

## II. DEFENDANTS' MOTION TO COMPEL DISCOVERY

Defendants' motion to compel discovery concerns the Olshan defendants' desire to obtain certain information from plaintiffs concerning their contacts with Steve Wade, the owner of Dwyer Concrete (including any repair estimates Steve Wade provided to them), and to contact Steve Wade directly concerning this matter, if they so choose. As grounds for their motion to compel, the Olshan defendants advise that on October 12, 2004, Steve Wade went to plaintiff's residence, observed the condition of the foundation of plaintiffs' residence after Olshan had performed the initial repair work to plaintiffs' residence earlier that month, and provided plaintiffs with an estimate for the cost to repair the damages to plaintiffs' residence, all of which occurred before Olshan commenced the remedial repairs to plaintiffs' residence on or about October 14, 2004. Defendants contend that at the time Steve Wade visited plaintiffs' residence on October 12, 2004, observed plaintiffs' residence, and gave plaintiffs' an estimate for the cost of the remedial repairs to their residence, he was consulted for the purpose of doing business with the plaintiffs and not for being a consultant for purposes of litigation. Therefore, defendants argue that Steve Wade should be classified as any other fact witness, rather than as being a consultant for purposes of litigation, and that they are entitled to

---

[1] Pursuant to numerical ¶ 1 of the district court's Scheduling Order entered herein on December 29, 2005, all discovery disputes were referred to the Magistrate Judge for resolution. [DE #6].

obtain information from plaintiffs about Steve Wade and/or to contact Steve Wade directly about this matter.

Plaintiffs object to defendants' motion to compel, contending that Olshan is not entitled to obtain any discovery from them concerning their consultation with Steve Wade and that Olshan is prohibited from contacting Steve Wade directly because Steve Wade is a non-testifying expert with whom they consulted in anticipation of litigation; therefore, pursuant to Fed.R.Civ.P. 26(b)(4)(B), plaintiffs are not required to disclose any information to Olshan about their consultation with Steve Wade and that Olshan is not permitted to contact Steve Wade directly.

## Discussion

In order to properly analyze defendants' motion to compel discovery from plaintiffs concerning Steve Wade and to determine whether Steve Wade is a non-testifying, consulting expert or whether Steve Wade is a fact witness, it is necessary to review the factual background and sequence of events surrounding Steve Wade's visit to plaintiffs' residence on October 12, 2004, and to view this visit in context.

Reviewing the series of pertinent events in chronological order, it appears that in late September of 2004, plaintiffs contacted at least two contractors, Olshan and Dwyer Concrete, to request an inspection of their residence and a quote for repairs concerning a crack in their basement floor. Steve Wade from Dwyer Concrete told plaintiffs that it would be approximately two weeks before he would be able to come to their residence and give them an estimate for repairs. Specifically, Steve Wade indicated that he could come to plaintiffs' residence on October 12, and Dennis Caldwell made a notation in his calendar that Steve Wade would give him an estimate on October 12. In the meantime, Dennis Caldwell also called Olshan for an estimate, and Olshan was able to provide a repair estimate the day after plaintiffs called to request a repair estimate and was able to begin the repair work in early October of 2004. It appears that since Olshan was able to promptly provide plaintiffs with an estimate and to begin work on this project, plaintiffs entered into a contract with Olshan to do the original repair work on the crack in their basement floor. However,

Dennis Caldwell forgot to call Steve Wade back and tell him that there was no need for him to come to their residence on October 12, as scheduled, for purposes of providing plaintiffs with an estimate to repair the crack in their basement floor because they had decided to enter into a contract with Olshan for the performance of this work since Olshan could do this work in early October.

On or about October 4, 2004, Olshan set about to repair the crack in plaintiffs' basement floor, and plaintiffs were dissatisfied with the performance of Olshan's work and concluded that Olshan had damaged their residence during the course of repairing the crack in the basement floor. Olshan agreed to perform remedial repairs.

On October 12, 2004, Steve Wade, being unaware of the series of events that had transpired subsequent to his conversation with plaintiffs in late September, went to plaintiffs' residence for the purpose of inspecting the crack in plaintiffs' basement floor and providing plaintiffs with an estimate for the cost of repairing that crack. Upon Steve Wade's arrival at plaintiffs' residence, he was informed that plaintiffs had decided to retain Olshan to perform this work. Plaintiffs also advised Steve Wade that they were dissatisfied with the performance of Olshan's work and that Olshan had damaged their property while performing this repair work, and they requested Steve Wade to provide them with an estimate for the cost of the remedial work necessary to repair the damages caused by Olshan in performing the original repair work on the crack in the basement floor. Steve Wade provided plaintiffs with such an estimate. However, Steve Wade's company, Dwyer Concrete, did not perform the remedial work in question. Instead, on or about October 14, 2004, a couple of days after Steve Wade had been to plaintiffs' residence and had given plaintiffs an estimate for this remedial repair work, Olshan commenced the remedial work to repair the damages to plaintiffs' residence resulting from Olshan's initial repair work.

Olshan did not perform the remedial repair work to plaintiffs' satisfaction. Subsequently, about three weeks later, as Dennis Caldwell's calendar reflects, in the space under the date Monday, November 1, 2004, he made the following notation: "Call Tom Miller. Set up a Thursday meeting. 2:00 p.m. His office." See Exhibit 1 to Olshan's Reply to Plaintiffs' Response to Olshan's Motion

4

to Compel the Production of Information Relating to Steve Wade [DE #34]. Presumably, Dennis Caldwell had in mind to schedule a meeting with Tom Miller on Thursday of that week, which would have been November 4, 2004. Assuming Dennis Caldwell called Tom Miller as planned, and assuming Tom Miller was available to meet with him on Thursday, November 4, it appears that plaintiffs' initial consultation with an attorney about this matter did not occur until November 4, 2004, exactly one month after Steve Wade had been to their residence and had given them an estimate for the cost of remedial repairs to their residence.

## Analysis

As previously stated, plaintiffs have resisted providing Olshan with any information concerning their dealings with Steve Wade, including producing the estimate Steve Wade gave them on October 4, 2004, concerning the cost of the remedial repair work to their residence, asserting that Olshan is not entitled to discover any information from them about their dealings with Steve Wade because Steve Wade is a non-testifying, consulting expert. As such, plaintiffs argue that pursuant to Fed.R.Civ.P. 26(b)(4)(B), they are not required to disclose any information to Olshan about their dealings with Steve Wade and that Olshan is not permitted to contact Steve Wade directly.

Fed.R.Civ.P. 26(b)(4)(B) provides, as follows:

**(4) Trial Preparation: Experts.**

. . .

**(B)** A party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Fed.R.Civ.P. 26(b)(4)(B).

Olshan's motion to compel rises or falls depending on whether Steve Wade is classified as a non-testifying, consulting expert or whether he is classified as a fact witness. Based on a review of those portions of Dennis Caldwell's deposition testimony that the parties provided to the court

5

relative to this motion to compel, the Magistrate Judge concludes that Steve Wade is simply a fact witness and that Olshan's motion to compel discovery from plaintiffs about their dealings with Steve Wade has merit. This conclusion is based on the following facts:

1. Steve Wade went to plaintiffs' residence on October 12, 2004, in response to Dennis Caldwell's telephone call to him in late September of 2004, requesting an estimate for the cost of repairing a crack in the basement floor of plaintiffs' residence. Until he arrived at plaintiffs' residence on October 12, Steve Wade was unaware that plaintiffs had retained Olshan to repair the crack in their basement floor, that Olshan had performed that work, and that plaintiffs were dissatisfied with the results of that work. Steve Wade was unaware of this series of events because after plaintiffs decided to retain Olshan to perform the initial repair work to their basement floor, Dennis Caldwell forgot to call Steve Wade back and tell him that he no longer needed an estimate for the cost of this repair work because plaintiffs had decided to contract with another company, Olshan, which was available to perform this repair in early October.

2. At this juncture, since Steve Wade was already at their residence for the purpose of providing plaintiffs with an estimate for the cost of repair work that had already been done by Olshan, Dennis Caldwell requested Steve Wade to provide plaintiffs with an estimate for the cost of the remedial work to repair the damages to their residence plaintiffs attributed to Olshan, and Steve Wade provided the requested estimate.

3. In his deposition testimony, Dennis Caldwell did not state that on October 12, 2004, when he requested Steve Wade to provide him with an estimate for the cost of the remedial repairs to plaintiffs' residence that (a) plaintiffs were anticipating litigation against Olshan due to the damages to their residence plaintiffs attributed to Olshan, (b) plaintiffs relayed to Steve Wade that they were anticipating litigation against Olshan due to the damages to their residence which they attributed to Olshan, (c) plaintiffs desired to retain Steve Wade as a non-testifying, consulting expert in this matter, or (d) plaintiffs retained Steve Wade as a non-testifying, consulting expert in this matter.

4. Thus, as far as the record reflects, Steve Wade went to plaintiffs' residence on October 12, 2004, for the purpose of providing plaintiffs with an estimate for the cost of repairing the crack in plaintiffs' basement floor, work that had already been performed by Olshan, and ultimately, at Dennis Caldwell's request, Steve Wade provided plaintiffs with an estimate for the cost of remedial repairs to their residence. There is no evidence of record to suggest that on October 12, 2004, or at any other time thereafter, plaintiffs retained Steve Wade for the purpose of being a non-testifying, consulting expert in this matter.

In objecting to Olshan's motion to compel, plaintiffs assert the following argument:

> Nonetheless, when Steve Wade from Dwyer arrived one day, Mr. Caldwell then had a completely different thought. He was very concerned about the extensive damages that Olshan had caused to his home and, in anticipating litigation over Olshan's gross negligence, decided to privately consult with Dwyer Concrete for that completely different purpose. Thus, Mr. Caldwell privately consulted Steve Wade of Dwyer Concrete to assess the damages that Olshan had caused, not to assess the original crack in the basement floor (which was now a moot point subsumed by the much greater damages caused by Olshan). Mr. Caldwell never told Olshan personnel the substance of what his private consultant, Dwyer Concrete, had communicated to him. D. Caldwell Depo. at 229 (copy attached).

Plaintiffs' Response in Objection to Olshan Defendants' Motion to Compel, p. 2 [DE #33].

The Magistrate Judge is unpersuaded by the foregoing argument of plaintiffs' counsel that plaintiffs have retained Steve Wade as a non-testifying, consulting expert. The unsupported argument of counsel is insufficient to establish that Steve Wade has been retained as a non-testifying, consulting expert. Based on a review of those portions of Dennis Caldwell's deposition that were attached to the memoranda in support of and in opposition to Olshan's motion to compel, there is no testimony by Dennis Caldwell that on October 12, 2004, he retained Steve Wade as a non-testifying, consulting expert and that that was the reason Steve Wade provided him with an estimate for the cost of the remedial repair work to plaintiffs' residence concerning the damages allegedly caused by Olshan during the performance of the initial repair work.

In view of the factual background of this matter, the only reasonable and logical conclusion to be drawn from Steve Wade's appearance at plaintiffs' residence on October 12, 2004, is that Steve Wade went to plaintiffs' residence on that date in response to Dennis Caldwell's telephone call to

him in late September of 2004, requesting an estimate to repair a crack in the basement floor. At the time of this telephone call, Steve Wade informed Dennis Caldwell that he was unavailable to come to plaintiffs' residence and give him the requested estimate until October 12. Thus, at that time, Dennis Caldwell and Steve Wade agreed that Steve Wade would come to plaintiffs' residence on October 12 to give plaintiffs' an estimate for the cost of repairing the crack in the basement floor. In the meantime, plaintiffs obtained Olshan to perform this work, and Dennis Caldwell forgot to call Steve Wade back and cancel that appointment. Since this appointment was never cancelled, Steve Wade appeared at plaintiffs' residence on October 12, as scheduled, thinking he was there for the purpose of providing plaintiffs with an estimate for the repair of the crack in the basement floor. However, in view of events that had transpired subsequent to Dennis Caldwell's telephone call to him in September, instead of providing plaintiffs with an estimate for the cost of the repairing the crack in the basement floor (which, at that point in time, was not possible to do because that repair work had already been done by Olshan), Dennis Caldwell requested Steve Wade to provide him with an estimate for the cost of remedial repair work.

The unsupported argument by plaintiffs' counsel that Steve Wade is a non-testifying, consulting expert does not carry the day. The argument of plaintiffs' counsel is the only evidence of record that Steve Wade is a non-testifying, consulting expert and that argument, without more, is insufficient to establish that Steve Wade is anything more than an ordinary fact witness.

Accordingly, **IT IS HEREBY ORDERED** that motion of the Olshan defendants to compel the production of information relating to Steve Wade [DE #32] is **GRANTED**. Plaintiffs are directed to respond to discovery requests requesting information concerning Steve Wade, including being subject to additional deposition concerning information about Steve Wade. Additionally, the

8

Olshan defendants are free to contact Steve Wade directly about this matter, including taking his deposition.

This __12Th__ day of January, 2007.

                                                      JAMES B. TODD,
                                                      UNITED STATES MAGISTRATE JUDGE