```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

```
DENNIS CALDWELL and              )
CHERYL CALDWELL,                 )
                                 )  Civil Action No. 5:05-462-JMH
                                 )
     Plaintiffs,                 )
                                 )
                                 )
v.                               )  MEMORANDUM OPINION AND ORDER
                                 )
OLSHAN FOUNDATION REPAIR CO.,    )
OF OKI, L.P., LIMITED;           )
ATLAS-GULF COAST, INC.; OLSHAN   )
FOUNDATION REPAIR COMPANY,       )
L.L.C. OLSHAN FOUNDATION REPAIR  )
CO. OF CINCINNATI, L.P.; and     )
LIBERTY MUTUAL INSURANCE         )
COMPANY,                         )
                                 )
     Defendants.                 )
```

                    **  **  **  **  **

This matter is before the Court on Defendant Olshan Foundation Repair Company's ("Defendant" or "Olshan") motion for partial summary judgment on the issue of damages [Record No. 37]. The plaintiffs ("Plaintiffs" or "the Caldwells") responded [Record No. 41] and the defendant replied [Record No. 47]. The matter is now ripe for review.

**FACTUAL BACKGROUND**

In September of 2004, the plaintiffs hired Olshan to perform repairs to a crack in the basement floor of their home in Georgetown, Kentucky. The Caldwells allege that Olshan caused extensive damage to their home while performing its work. As a

result, the Caldwells allege that Olshan entered into an October 7, 2004, written agreement by which it promised to repair the damage caused by its workers to the satisfaction of the Caldwells and at no expense to them. The Caldwells allege that Olshan then breached that agreement. Once again, Olshan agreed to repair the damage, including replace a concrete floor, install a "waterlock" perimeter around the room, install the "cablelock piling," replace doors and return them to proper operation, repair drywall, and repair moldings and wallpaper. The Caldwells assert that Olshan has failed to repair the damage done to their home and its contents. Furthermore, the Caldwells claim that Mr. Caldwell suffered personal injuries when Olshan's workers attempted to back their trailer and generator down his driveway.

Liberty Mutual insures Olshan, and the Caldwells have brought additional claims against this insurer. The Caldwells maintain that they informed Liberty Mutual of their claims under Olshan's policy in November of 2004 and had not received any offer from Liberty Mutual as of August of 2005.

The Caldwells assert breach of contract and negligence claims against Olshan and a bad faith/unfair settlement practices claim against Liberty Mutual, which has been stayed.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Pursuant to Federal Rule of Civil Procedure 56(e), the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). "If under the governing law, the outcome would be the same regardless of how a factual dispute is resolved, the dispute is no bar to summary judgment." *Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 407 (6th Cir. 2003).

When determining whether there is enough evidence to overcome summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, in this case, the plaintiffs. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). The Court must not weigh the evidence, but must decide whether there are genuine issues for trial. *Anderson*, 477 U.S. at 249.

**ANALYSIS**

**Property Damage**

Plaintiffs seek to recover for property damage allegedly committed by Olshan while attempting to repair a crack in Plaintiffs' basement floor. As Defendant contends and Plaintiffs agree, Kentucky law states that the maximum amount of damages a plaintiff can recover for injury to property is equal to the diminution of fair market value. *See Ellison v. R. & B. Contracting, Inc.,* 32 S.W.3d 66, 70 (Ky. 2000)("As a practical matter, therefore, the amount by which the injury to the property diminished its total value operates as an upper limit on any damage recovery."). An award of the cost of repairs to restore the damaged property to substantially its original state is appropriate only when the cost of repairs is less than the decrease in the property's fair market value. *See id.; see also Lichtefeld v. Mactec Eng'g & Consulting*, No. 05-5884, 2007 WL 843799 (6th Cir. Mar. 21, 2007)(citing *Ellison*).

The debate between the parties in the instant case is whether the plaintiffs have produced evidence of the diminution in the fair market value of their home by which a reasonable jury could find in

their favor.  As evidence of the diminution in fair market value, the defendant relies on an appraisal by Barbara Kopp, a certified appraiser with Amerigroup Appraisals.  Ms. Kopp appraised the property on June 20, 2006,[1] at which time she stated that the value of the home was $285,000.  She conditioned the appraisal on the repair of the crack in the basement floor saying, "[t]his appraisal is subject to the repairs to the basement floor."  Ms. Kopp supplemented her report on October 26, 2004, again reiterating that her appraisal of the value of the property, $285,000, is ""subject to" the basement floor repairs."  In essence, Ms. Kopp's appraisal indicates that the diminution in fair market value of the home is simply the cost of repairs to the basement floor, which defense expert Chuck Ross states will total $18,050.

Olshan claims that because Plaintiffs have not offered the opinion of an appraiser to rebut Ms. Kopp's report, Olshan is entitled to summary judgment on the issue of the diminution in fair market value of the plaintiff's property.  Plaintiffs do not dispute that they lack testimony from a certified appraiser; they contend, however, that under *Ellison*, the testimony of their construction expert, Jeff Wolfe of JWI Restorations, that the repairs to the house will total $135,769.63 can serve to rebut Ms. Kopp's testimony regarding the diminution in fair market value.

---

[1] Plaintiffs noticed the crack in their basement floor in September, 2004.  Olshan commenced work on, and allegedly damaged, the house in October, 2004.

-5-

*Ellison* clearly states, and the parties agree, that diminution in fair market value operates as a ceiling for recovery in an "injury-to-property" case. *Ellison,* 32 S.W.3d at 70. *Ellison* goes on to say that "reasonable inferences regarding diminution in fair market value drawn from evidence of restoration costs do not evaporate when an "expert" expresses an opinion contrary to the reasonable inference." *Id. at* 77. Under *Ellison*, there is a inference that the cost to repair property to its pre-damage state is equal to the diminution in fair market value.

In *Ellison*, landowners with property fronting a road construction project brought an action against the construction companies for trespass, alleging that the companies impermissibly stored and serviced heavy equipment on their property and deposited debris from the project onto their land. The plaintiffs did not offer the testimony of an appraiser to rebut the construction companies' expert's testimony that there was no diminution in fair market value to the land. The plaintiffs did offer testimony that the cost to remove the debris from their land would be ten cents per cubic yard, for a total of $145,000. The construction company defendants argued that they were entitled to a directed verdict because the plaintiffs did not have direct evidence of the decrease in fair market value. In response to this argument, the Kentucky Supreme Court held that there is a presumption that the cost to return a property to its pre-damage state is equal to the

diminution in fair market value. *Id.* at 78 ("It may be presumed that the anticipated cost of repair would reduce the value by an equal amount.")(citing *Newsome v. Billips*, 671 S.W.2d 252, 254-55 (Ky. Ct. App. 1984)(internal quotations omitted).

The plaintiffs offered the testimony of Jeff Wolfe that the cost to repair the property to its pre-injury state is $135,769.63. This evidence creates a presumption that the fair market value of the property decreased by an equal amount. Based on Ms. Kopp's appraisal and Mr. Ross's estimate of the cost to repair the plaintiff's basement floor, Olshan claims that the property's value only decreased by $18,050. These opposing estimates regarding the diminution in fair market value create a question of fact for the jury and are not appropriate for summary judgment. *Ellison,* 32 S.W.3d at 70 ("Questions regarding . . . the extent of any diminution in fair market value of the real estate as a result of an injury are questions of fact."); *Smith v. Milburn Walker Estate,* No. 2002-CA-616, 2004 WL 221175, *4 (Ky. Ct. App. 2004) ("as noted in Ellison, issues regarding the costs of repairing a particular injury to real estate, and the extent of any diminution in value as a result of an injury, present questions of fact which are properly submitted to a jury.") (citing *Ellison* at 70).

### Personal Injury Damages

In its motion for summary judgment, Olshan argues that Plaintiffs are not entitled to recover for personal injuries

arising out of the alleged breach of contract. In response, the plaintiffs clarify that their claim for personal injury damages arises out of their claim of negligence, not the breach of contract claim. As such, Plaintiffs shall not recover damages for personal injury arising out of the breach of contract claim.

### Punitive Damages

Plaintiffs seek actual and punitive damages against Olshan. Plaintiffs concede to Olshan's argument that KRS 411.184(4) serves as a bar to punitive damage recovery in breach of contract cases and clarify that they are not seeking punitive damages based on the alleged breach of contract. Plaintiffs only seek punitive damages based on Olshan's alleged negligence.

Pursuant to KRS 411.184(2), punitive damages are available if a plaintiff proves "by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice." *Id.* In addition, the Kentucky Supreme Court held that notwithstanding the statute, punitive damages are also available to a plaintiff if gross negligence is shown. *Williams v. Wilson*, 972 S.W.2d 260 (Ky. 1998); *see also Turner v. Werner Enterprises*, 442 F.Supp.2d 384, 385 (E.D.Ky. 2006).

Olshan argues that there is no evidence, much less clear and convincing evidence, of oppression, fraud, or malice to justify punitive damages under Kentucky's punitive damage statute. *See*

KRS 411.184(2). Plaintiffs offer no evidence in rebuttal, therefore, Plaintiffs can only recover punitive damages upon a showing that Olshan was grossly negligent. Under Kentucky law, gross negligence is defined as "a wanton or reckless disregard for the lives, safety or property of other persons." *Phelps v. Louisville Water Co.,* 103 S.W.3d 46, 52 (Ky. 2003)(citing *Horton v. Union Light, Heat & Power Co.,* 690 S.W.2d 382 (Ky. 1985)). If, upon reading the facts in a light most favorable to the plaintiff, there is evidence from which a reasonable jury could conclude that Olshan was grossly negligent, Defendant's motion for summary judgment on the issue of punitive damages must be denied. This Court finds that there is not sufficient evidence for a reasonable jury to conclude that Olshan's actions constituted gross negligence.

In response to Olshan's argument that there is no evidence to support a finding of gross negligence, the Caldwells offer a laundry list of Olshan's actions which they contend amounted to reckless disregard for their lives, safety, or property. The actions complained of include: misdiagnosing the cause of the crack in the basement floor as being the result of hydrostatic pressure; sending a crew of three workers, one of whom was "very young"; not sending a supervisor with the crew; forgetting tools; damaging the yard, landscape beds, and mailbox with a truck; damaging the driveway by driving across it with the generator hooked to the

truck; unhooking the generator on a slope, after which it rolled into a retaining wall and Mr. Caldwell; and jackhammering directly beneath the basement floor.

While the damage to the Caldwells' property and to Mr. Caldwell were unfortunate occurrences, there is no evidence that they were the result of Olshan's "reckless disregard" for the Caldwells or their property. There is no evidence that Olshan's misdiagnosis of the cause of the crack in the basement floor was intentional or reckless. Additionally, Plaintiffs offered no evidence to demonstrate that the small, unsupervised crew, including one "very young" member, was inappropriate for the task at hand. The fact that the workers forgot some tools is similarly of no consequence without evidence that such forgetfulness amounted to reckless disregard for the Caldwell's property. While damaging the Caldwell's land, driveway, and mailbox with a truck may be evidence of Olshan's negligence - which is a question for the jury - without more, it is not evidence of gross negligence, especially considering that similar damage occurs in many situations where construction is proceeding at a residence. Plaintiffs also assert that it is "self-evident" that jackhammering beneath a basement floor is grossly negligent. In a case such as this where the foundation of the home needed to be repaired, this Court needs more than a party's conclusory statement that such jackhammering was grossly negligent, however, the plaintiffs offered no proof of

such. Finally, while a downward sloping surface may not be the ideal place to unhook a generator, Plaintiffs offered no evidence that such placement was made with a reckless disregard for their persons or their property, or that such placement was not necessary for the task at hand. When attempting to define gross negligence, Kentucky courts have repeatedly used the term "outrageous" to describe the behavior that amounts to gross negligence. *See Kinney v. Butcher*, 131 S.W.3d 357, 359 (Ky. Ct. App. 2004)(citing *Phelps v. Louisville Water Co.,* 103 S.W.3d 46, 52 (Ky. 2003)). The plaintiffs have offered no evidence upon which a reasonable jury could conclude that Olshan's actions were so outrageous as to rise to the level of gross negligence. Accordingly, Plaintiffs' claim for punitive damages is dismissed.

Having determined that there is no evidence of oppression, fraud, malice, or gross negligence upon which a reasonable jury could base an award of punitive damages against Olshan, this Court need not reach Plaintiffs' arguments regarding the constitutionality of KRS 411.184(3) or the liability of Olshan for its employees' action under a theory of *respondeat superior.*

## CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

(1) That Defendant's motion for partial summary judgment on the issue of damages [Record No. 37], be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART;**

(2) That the amount of diminution in fair market value to which the plaintiffs are entitled is a question of fact for the jury;

(3) That Plaintiffs' claims for personal injuries, embarrassment, stress, inconvenience, or other emotional damage arising out of the alleged breach of contract be, and the same hereby are, **DISMISSED WITH PREJUDICE.**

(4) That Plaintiffs' claim for punitive damages arising out of Defendant's alleged negligence be, and the same hereby is, **DISMISSED WITH PREJUDICE.**

This the 2nd day of April, 2007.



Signed By:
*Joseph M. Hood*
United States District Judge